IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| M&G HEALTH ASSOCIATES, INC., A/K/A M&G HEALTH ASSOCIATES, SC,<br><br>                      Plaintiff,<br><br>    v.<br><br>HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, D/B/A BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>                      Defendant. | CASE NO. 08CV3944<br><br>HONORABLE JUDGE LEFKOW<br>HONORABLE MAGISTRATE JUDGE COX |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS</u>**

Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross Blue Shield of Illinois ("HCSC"), submits the following Memorandum of Law in Support of its Motion to Dismiss the Complaint filed by Plaintiff M&G Health Associates, Inc., a/k/a M&G Health Associates, SC ("M&G"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.    INTRODUCTION**

Plaintiff's state law claims assert through various legal theories that HCSC improperly denied health insurance benefits owed to Plaintiff's patients. Plaintiff has stepped into the shoes of its patients by alleging that it obtained Assignments of Benefits from the patients. Plaintiff alleges that the patients were "covered" by plans that HCSC issued or administered, that Plaintiff rendered "covered" services to those patients, and that HCSC failed to process the claims, or that HCSC improperly processed those claims by paying the patients instead of Plaintiff.

To the extent Plaintiff's claims are derived from employee welfare plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), Counts I, II, III and VI are subject to complete preemption under ERISA § 502(a) and all counts are subject to conflict preemption under ERISA § 514(a). As an alleged assignee, Plaintiff could assert Counts I, II, III

and VI under ERISA § 502(a) because they are, in effect, claims for benefits under the patients' plans. These counts invoke no independent legal duty owed by HCSC. All counts also are subject to conflict preemption under ERISA § 514(a) because they "relate to" the patients' welfare benefit plans. As such, all counts should be dismissed with prejudice to the extent they involve ERISA-governed employee welfare plans.[1] Additionally, as to all claims, Count VII should be dismissed with prejudice for failure to state a claim.

## II.   FACTUAL ALLEGATIONS

### A.   The Complaint.

As alleged in the Complaint, Plaintiff is an Illinois medical corporation that provides out-patient surgical facilities and supplies to patients and referring doctors in need of surgical services. (Compl. ¶ 4.) HCSC is a health insurer that also processes claims on behalf of self-funded plans as a "third-party administrator" ("TPA"). (Compl. ¶¶ 5, 8.) Plaintiff does not have a participating provider contract with HCSC, and is an "out-of-network provider." (Compl. ¶ 9.)

Plaintiff provided services to patients listed in Group Exhibits A through C to the Complaint, each of whom were either "covered" under health insurance policies issued to them by HCSC or whose claims were administered by HCSC as a TPA. (Compl. ¶¶ 13-15.) According to the Complaint, the services M&G provided to the patients were "covered" under the various health insurance policies issued or contracts administered by HCSC. (Compl. ¶¶ 13-15.) Each of the patients executed "Assignments of Benefits," "putting M&G in the shoes of the insureds for purposes of collecting direct payments from [HCSC] for the health care services rendered under the insureds' insurance policies and contracts." (Compl. ¶ 20.)

---

[1] The Complaint attached Group Exhibits A, B, and C, referencing the patient names and policies for the claims asserted. Because Plaintiff does not limit the allegations in its counts to those patients whose plans are not governed by ERISA, each count, as pleaded, is preempted by ERISA. HCSC thus has moved to dismiss in lieu of answering. *See* Fed. R. Civ. Pro. 12(b)(6).

- 2 -

Prior to providing treatment to the patients listed in Group Exhibits A and B, Plaintiff's representatives called HCSC to verify the insurance coverage available to the patients. (Compl. ¶¶ 27, 46.) Plaintiff alleges that HCSC represented that "the individuals were covered for services to be rendered." (Compl. ¶¶ 28, 47.) For the Group A patients only, HCSC allegedly stated "the specific amount of benefits available" for the services to be rendered. (Compl. ¶ 29.) After providing services to the patients, M&G submitted "claim[s] to [HCSC] for payment of benefits under the health insurance contracts of the patients." (Compl. ¶¶ 35, 52, 92.) HCSC allegedly failed to process the claims or, in the alternative, processed the claims and made payment directly to the patients, despite the Assignments of Benefits. (Compl. ¶¶ 38, 55.)

Count I purports to allege a claim of breach of contract as a result of HCSC's alleged failure to pay Plaintiff directly under the Assignments of Benefits. Counts II and III assert claims of promissory estoppel based on HCSC's alleged failure to process the claims or, in the alternative, processing claims and making payments directly to the patients, despite the Assignments of Benefits. Counts IV, V and VII purport to allege common law claims of unjust enrichment, *quantum meruit*, and account stated. Count VI purports to allege a violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155.

B.   **Hilgemann Affidavit.**

HCSC enters into contracts with employer groups to provide health care benefits under a policy of insurance issued by HCSC.[2]   (Hilgemann Aff. ¶ 5, attached hereto as Exhibit A.)   In

---

[2] The Court may properly consider extrinsic evidence in addressing a 12(b)(6) motion where those documents are referred to in a complaint and are central to the plaintiff's claim. *Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002). By attaching spreadsheets listing the different patient group policies, alleging that each patient was an insured of HCSC or a participant in a plan that HCSC administered, and by claiming that it is the assignee of the patients' contractual rights, Plaintiff has invoked the insurance contract of each patient at issue. Plaintiff's spreadsheets summarizing these contracts fail to indicate whether the patient participated in a plan governed by ERISA. HCSC has supplemented these spreadsheets by indicating those contracts from which Plaintiff derives its rights that are ERISA-governed plans. The Court may properly consider this supplemental information describing the relevant

such instances, known as "Premium Groups," the employer group is required to identify the class of beneficiaries, including its employees, and pays all or a portion of the premiums. (Hilgemann Aff., Ex. A, ¶ 5.) In other instances, known as "Cost Groups," HCSC enters into a contract with the employer group to provide specified administrative services for a welfare benefit plan established by the employer. (Hilgemann Aff., Ex. A, ¶ 6.) With respect to Cost Groups, the plan is established and funded by the employer, and the employer establishes terms under which plan beneficiaries can obtain health care benefits. (Hilgemann Aff., Ex. A, ¶ 6.) The persons listed on Exhibit 1 to the Hilgemann Affidavit were members either of Premium Groups, in which HCSC contracted with an employer group to provide health care benefits under a policy of insurance, or Cost Groups, in which HCSC entered into a contract with an employer group to provide specified administrative services.[3]

### III.    ARGUMENT

### A.    The Patients Identified In Exhibit 1 To The Hilgemann Affidavit Derived Their Rights From Employee Welfare Benefit Plans Subject To ERISA.

An employee welfare benefit plan under ERISA is:

> any plan, fund or program . . . established or maintained by an employer or by an employee organization . . . for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, [] medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment. . . .

---

characteristics of the insurance contracts central to Plaintiff's Complaint. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431-32 (7th Cir. 1993). Analogously, courts may consider affidavits and other material where subject matter jurisdiction is disputed. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The additional details regarding the contracts invoked here also serve to confirm the Court's jurisdiction.

[3] Exhibit 1 to the Hilgemann Affidavit may contain Protected Health Information under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Accordingly, HCSC has filed a motion for entry of qualified protective order. Upon entry of the order, HCSC will file Exhibit 1 to the Hilgemann Affidavit with the Court under seal. HCSC has served this exhibit on Plaintiff outside of the electronic case filing system.

29 U.S.C. § 1002(1); *Brundage-Peterson v. Compcare Health Servs. Ins. Corp.*, 877 F.2d 509, 509 (7th Cir. 1989). Where an employer purchases health insurance coverage, establishes employee eligibility requirements, and pays all or a portion of the premiums, the employer has established an employee welfare benefit plan within Section 1002(1) of ERISA. *Brundage-Peterson*, 877 F.2d at 510-11; *Sofo v. Pan-American Life Ins. Co.*, 13 F.3d 239, 241 (7th Cir. 1994). The "Premium Groups" identified in the Hilgemann Affidavit comfortably fit within the definition of an employee welfare benefit plan subject to ERISA. The employers participating in the Premium Groups contract with HCSC to provide health insurance coverage for their employees, establish eligibility requirements by identifying the class of beneficiaries who may participate, and pay at least a portion of the premiums. (Hilgemann Aff., Ex. A, ¶ 5.) Similarly, the members of the "Cost Groups" identified in the Hilgemann Affidavit also derived their rights from employee welfare benefit plans subject to ERISA. With a Cost Group, HCSC enters into a contract with the employer group to provide specified administrative services for a welfare benefit plan established and funded by the employer, and the employer establishes the terms under which plan beneficiaries can obtain health care benefits. (Hilgemann Aff., Ex. A, ¶ 6.)

    **B.**    **Complete Preemption Under ERISA § 502(a) And Conflict Preemption Under ERISA § 514(a).**

The purpose of ERISA is to establish a uniform regulatory regime over employee benefit plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To ensure uniformity, Congress made the regulation of employee benefit plans exclusively a federal concern. *Id*. To further this goal, "ERISA includes expansive preemption provisions." *Id*. Creatively pleading a denial of

benefits claim as a state law claim thus cannot defeat the broad preemptive force of ERISA.[4] *Klassy v. Physicians Plus Ins. Co.*, 371 F.3d 952, 957 (7th Cir. 2004).

### 1.     Complete Preemption Under ERISA § 502(a).

The Seventh Circuit recently adopted the test for complete preemption as outlined in *Davila*. *Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health & Welfare Trust Fund*, --- F.3d ----, 2008 WL 2927347, at *2 n.1 (7th Cir. July 31, 2008). A cause of action is completely preempted by ERISA: (1) "if an individual, *at some point in time, could have brought* his claim under ERISA § 502(a)(1)(B)," and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Id*. at *2 (quoting *Davila*, 542 U.S. at 210) (emphasis added). Under § 502(a): "A civil action may be brought (1) by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B), commonly cited as "ERISA § 502(a)(1)(B)."

*Davila* does *not* test whether the plaintiff is currently asserting an ERISA claim, but rather, if "at some point in time," the claim could have been brought under ERISA. *Davila*, 542 U.S. at 210. Nor does *Davila* test whether plaintiff's state law claims precisely duplicate a cause of action under ERISA § 502(a). *Davila*, 542 U.S. at 216. Instead, complete preemption lies whenever the allegations complain about denials of coverage promised under the terms of ERISA-regulated employee benefit plans. *Id*. at 211. Claims falling within § 502(a) are

---

[4] Suits that are (or could be) cognizable under ERISA's civil enforcement provisions are federal question suits. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir. 1996). "[A] suit for benefits allegedly due under an ERISA plan arises under ERISA, and therefore under federal law, and hence is removable to federal district court." *Brundage-Peterson*, 877 F.2d at 510. The Court may then exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) as long as the claims share at least a "loose factual connection." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995). The Court has original jurisdiction over Counts I, II, III and VI as they are completely preempted by ERISA. The Court has supplemental jurisdiction over Counts IV, V and VII, as well as the claims involving patients without ERISA-governed plans, as they all arise from a common nucleus of fact.

completely preempted, no matter their state law characterization in the complaint, and are subject to dismissal. *Klassy*, 371 F.3d at 954, 957.

### 2. Conflict Preemption Under ERISA § 514(a).

Conflict preemption under § 514(a) of ERISA is broader than complete preemption under § 502(a), and provides a federal defense. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1492 (7th Cir. 1996). Conflict preemption preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a) (emphasis added), commonly cited as "ERISA § 514(a)." The "relates to" requirement should be given a broad, common sense meaning. *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 739 (1985). A state law "relates to" a covered employment benefit plan if it either has "a connection with" or "a reference to" such a plan. *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 968 (7th Cir. 2000), *aff'd*, 536 U.S. 355 (2002). Conflict preemption "is not limited to state laws specifically designed to affect employee benefit plans, and can encompass both state common law and statutory causes of action." *Buehler Ltd. v. Home Life Ins. Co.*, 722 F. Supp. 1554, 1558 (N.D. Ill. 1989) (internal citation omitted). Conflict preemption exists where the court would need to examine the health care benefit plan in order to resolve the claim. *Jass,* 88 F.3d at 1493. Conflict preemption also occurs where the benefit plan provides the sole basis for the parties' relationship. *Id*. at 1493.

### C. All Claims Asserted As To The Patients Identified In Exhibit 1 To The Hilgemann Affidavit Should Be Dismissed Due To ERISA Preemption.

Because many of the health insurance policies on which Plaintiff bases its claims for benefits are ERISA-governed plans, Plaintiff has treaded into ERISA waters and called for a preemption analysis. *Davila's* first prong asks if, "at some point in time," the claim could be brought under ERISA § 502(a). *Davila*, 542 U.S. at 210. Once a patient assigns his or her rights

to a provider, the provider becomes a beneficiary of the plan.  *Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991); *Melmedica-Children's Healthcare, Inc. v. Central States Joint Bd. Trust Fund*, No. 05 C 2686, 2006 WL 794772, at *2 (N.D. Ill. Mar. 27, 2006).  And, it is a "participant" or "beneficiary" who can assert a claim for benefits due under § 502(a).  ERISA § 502(a).  In Count I, Plaintiff has alleged that "[a]t all times relevant to this matter, there also existed contracts between [HCSC's] insureds and M&G in the form of Assignment of Benefits agreements."  (Compl. ¶ 17.)  Plaintiff incorporates by reference this allegation into Count VI.  (Compl. ¶ 83.)  In both of its promissory estoppel counts (Counts II and III), Plaintiff alleges that the patients executed Assignment of Benefit forms.  (Compl. ¶¶ 36, 53.)  Plaintiff's status as an ERISA beneficiary therefore satisfies *Davila's* standing requirement for Counts I, II, III and VI as discussed below.  *See Davila*, 542 U.S. at 210.

        **1.**     **Plaintiff's Breach Of Contract Claims Are Subject To Complete And Conflict Preemption Under ERISA.**

State law contract claims are completely preempted by § 502(a) where those claims are, in effect, claims for benefits under the ERISA plan.  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-66 (1987) (holding that contract claims to recover benefits from a covered plan are completely preempted); *see Rice v. Panchal*, 65 F.3d 637, 640-41 (7th Cir. 1995).

The first prong of *Davila* is satisfied here.  *See Davila*, 542 U.S. at 210.  The Complaint alleges that each patient was "covered" under a health insurance policy issued by or administered by Defendant.  (Compl. ¶¶ 13-15.)  Through the Assignments of Benefits, Plaintiff stands "in the shoes" of the plan beneficiaries, and claims the benefits due under their plans.  (Compl. ¶ 20.)  Thus, Plaintiff could act as a beneficiary and bring suit to recover benefits due under the plans.

*Davila's* second prong is satisfied as well.  *See Davila*, 542 U.S. at 210.  No allegations speak to any independent legal duty owed by HCSC.  Plaintiff does not have a "participating

provider" contract with HCSC and no other direct contractual relationship is alleged. HCSC's obligation to pay Plaintiff, if any, arises exclusively from its contractual relationship with Plaintiff's patients. Plaintiff has claimed that it is HCSC's insurance policies that "obligate" HCSC to pay for the services rendered to the patients (Compl. ¶ 16) and that those services "were covered under the insureds' health insurance policies" (Compl. ¶ 22). To the extent that the contractual relationship is governed by ERISA, it is subject to complete preemption.

Once it is determined that a claim is completely preempted by ERISA, it is evident that the claim is also subject to ERISA conflict preemption. *Lister v. Stark*, 890 F.2d 941, 944 (7th Cir. 1989). Indeed, courts routinely hold that common law breach of contract claims are subject to conflict preemption under § 514(a). *See Taylor*, 481 U.S. at 62; *Dranchak v. Akzo Nobel Inc.*, 88 F.3d 457, 459-60 (7th Cir. 1996). In *Buehler*, the court ruled that, *inter alia*, the common law claims for breach of contract were subject to conflict preemption under ERISA where they were predicated on the denial of benefits under the welfare benefit plan. 722 F. Supp. at 1561. Plaintiff's breach of contract claim clearly "relates to" the ERISA plans in question. Via the Assignments of Benefits, Plaintiff claims the amount of benefits due to its patients under the insurance plans issued by (or administered by) HCSC. (*See* Compl. ¶¶ 20-22.) As this count is predicated on HCSC's denial of benefits under the plans, it is subject to conflict preemption.

      **2.**    **Plaintiff's Promissory Estoppel Counts Are Subject To Complete And Conflict Preemption Under ERISA.**

A promissory estoppel claim for benefits under ERISA is completely preempted under ERISA where adjudicating that claim would require an interpretation of the ERISA plan at issue. *Caparelli v. Exelon Corp.*, No. 05 C 7170, 2006 WL 1084289, at *3-4 (N.D. Ill. Apr. 21, 2006) (finding that plaintiff's promissory estoppel claims were completely preempted by § 502); *see also Lister*, 890 F.2d at 944-46 (holding that state law claim for breach of oral contract was

completely preempted); *Mahon v. Cyganiak Planning, Inc.*, 41 F. Supp. 2d 910, 916-17 (E.D. Wis. 1999) (finding that plaintiff's claim for misrepresentation by an agent through vicarious liability was completely preempted).

Once again, Plaintiff has satisfied *Davila's* first prong. As a plan beneficiary/assignee of its patients (Compl. ¶¶ 36, 53), Plaintiff could bring suit here to recover the benefits allegedly due under the policies. These counts also concern denials of coverage promised under the terms of the plans. *See Davila*, 542 U.S. at 211. Plaintiff has not disclaimed any ERISA benefits under the plans, but rather has alleged in both promissory estoppel counts that all of its patients were "covered" under health insurance policies issued or administered by HCSC (Compl. ¶¶ 26, 45); that Plaintiff provided services that were "covered" under those policies (Compl. ¶¶ 26, 45); and that Plaintiff properly claimed these benefits under the policies (Compl. ¶¶ 35, 52).

Plaintiff also fulfills *Davila's* second prong here. Plaintiff has alleged no independent contractual right to direct payment. Tellingly, Plaintiff never alleged that HCSC promised to make payments directly *to Plaintiff*; instead, Plaintiff alleges that HCSC "represented that the individuals were covered for services to be rendered at M&G." (Compl. ¶¶ 28, 47.)[5] Any right that Plaintiff has to receive direct payment must be based on the Assignment of Benefit forms. (Compl. ¶¶ 36, 53.) The crux of these counts is that HCSC failed to process its claims for benefits due under the plan policies, or improperly processed those claims by paying the patient instead of Plaintiff. (Compl. ¶¶ 38, 55.) The promises here do not constitute independent duties; they arise directly from/or are ancillary to the plans. *See Caparelli*, 2006 WL 1084289, at *4.

In addition to being completely preempted, Plaintiff's promissory estoppel counts also are subject to conflict preemption. Where a non-participating provider is alleged to be a

---

[5] For the Group A patients, Plaintiff also alleges that HCSC stated the specific amount of "benefits" available and the out-of-pocket maximums, but alleges no promise of direct payment. (Compl. ¶¶ 29-30.)

- 10 -

beneficiary of the ERISA plan though Assignments of Benefits, promissory estoppel claims are subject to conflict preemption. *Melmedica*, 2006 WL 794772, at *2; *cf. Rehab. Inst. of Chicago v. Group Adm'rs, Ltd.*, 844 F. Supp. 1275, 1278-83 (N.D. Ill. 1994) (finding no conflict preemption of promissory estoppel claim where third-party provider was not an ERISA plan assignee); *Parkside Lutheran Hosp. v. R.J. Zeltner & Assocs., Inc. ERISA Plan*, 788 F. Supp. 1002, 1007 (N.D. Ill. 1992) (suggesting that a third-party provider's estoppel and negligent misrepresentation claims could be conflict preempted if the conversations between plan and provider "concerned the nature of the coverage under the plan"). "Using a state law promissory estoppel claim to prevent the plan's denial of coverage would be inappropriate and would contravene the purposes of the ERISA statute, which is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plan as written." *Melmedica*, 2006 WL 794772, at *2 (internal citation omitted). "[A]ny money [the plaintiffs] obtained from this suit would be functionally a benefit to which the written terms of their plan do not entitle them. This type of end run is regularly rebuffed." *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir. 1992) (holding that plaintiffs' claim for damages for relying on misleading representation concerning their daughter's coverage was subject to ERISA conflict preemption because it related to the benefit plan).

Plaintiff's claims here still seek "benefits" due under the plans, albeit through allegations of misrepresentation. (Compl. ¶¶ 38, 55.) Such claims do not escape conflict preemption. *See Pohl*, 956 F.2d at 128. Because these claims could not be resolved without an examination of the plans, they "relate to" ERISA plans, and are preempted. *See Jass*, 88 F.3d at 1493.

### 3. Plaintiff's Count Alleging A Violation Of Section 155 Of The Illinois Insurance Code Is Subject To Complete And Conflict Preemption.

Statutory bad-faith claims are completely preempted by ERISA because they are, in effect, allegations of improper claims processing. *See Rice*, 65 F.3d at 641, 644 ("where the state law has the effect of creating a qualitative standard (e.g., 'bad faith,' 'improper') by which the performance of the contract is evaluated, then that state law is completely preempted").

Due to the alleged Assignments of Benefits (Compl. ¶ 83), Plaintiff could assert this claim under *Davila's* first prong. Moreover, Plaintiff's count alleging a violation of Section 155 of the Illinois Insurance Code is a claim for plan benefits under another heading, making it one that could be brought under § 502(a). The specific allegation is one of improper claims processing, focusing on HCSC's "withhold[ing] payment of claims." (Compl. ¶ 85.)

As for *Davila's* second prong, there can be no independent legal duty here because the relationship between Plaintiff and Defendant arises from the insurance policies issued or administered by Defendant. In fact, without the Assignment of Benefits, Plaintiff would have no standing to even bring suit under Section 155, which limits its protections to insureds and their assignees. *See Buehler*, 722 F. Supp. at 1563.

Plaintiff's Section 155 claim is also subject to conflict preemption under ERISA. "Every court in the Northern District of Illinois that has addressed the issue has found Section 155 of the Illinois Insurance Act, which provides remedies for vexatious and unreasonable delays in claim processing, 'relate[s] to' an ERISA plan." *Gawrysh v. CNA Ins. Cos.*, 978 F. Supp. 790, 793 (N.D. Ill. 1997). A plaintiff cannot avoid ERISA's civil enforcement provision by pleading a claim under Section 155. *Buehler*, 722 F. Supp. at 1562. Here, Plaintiff specifically alleged that HCSC's unreasonable behavior was its delaying or withholding the "payment of claims" (Compl. ¶ 85), showing that Plaintiff truly seeks to recover benefits under the ERISA plans in its

Section 155 claim. Because this count could not be resolved without examining the health care plans involved, it "relates to" the plans, and as such, is preempted. *See Jass*, 88 F.3d at 1493.

### 4. Plaintiff's Counts For Unjust Enrichment, *Quantum Meruit* And Account Stated Are Subject To ERISA Conflict Preemption.

The broad preemptive reach of ERISA extends to all state laws that "relate to any employee benefit plan." *See* ERISA § 514(a). In each of these counts, the threshold determination is whether the services rendered to the patients were services "covered" by the insurance policies that HCSC issued or administered. As this question must be answered affirmatively for HCSC to have a duty to pay or for Plaintiff to have any basis for pursuing these claims, these causes of action "relate to" those plans and are subject to conflict preemption.

Claims for unjust enrichment and *quantum meruit* are conflict preempted. *See, e.g., Cunningham v. Snap-on Tools Co.*, No. 04-CV-4136, 2005 WL 3234392, at *10 (S.D. Ill. Nov. 29, 2005), dismissing additional claims as conflict preempted on reconsideration in part, 2006 WL 1599825 (S.D. Ill. June 8, 2006); *Oplchenski v. Parfums Givency, Inc.*, No 05 C 6105, 2007 WL 1933149, at *4 (N.D. Ill. June 27, 2007). These types of state law claims are conflict preempted because they attempt "to obtain benefits they believe are due them under [the] ERISA-covered severance plan, a subject that is a fundamental concern of ERISA." *Cunningham*, 2005 WL 3234392, at *10. Defendant must also have a duty to act and have failed to act on the duty in order to properly allege unjust enrichment. *Lewis v. Lead Indus. Ass'n, Inc.*, 342 Ill. App. 3d 95, 105, 793 N.E.2d 869, 877 (1st Dist. 2003).

Plaintiff invokes the ERISA plans in both its unjust enrichment and *quantum meruit* claims, again alleging that it provided "services that were covered under the various health insurance policies." (Compl. ¶¶ 63, 74.) Both counts allege that Defendant unjustly retained premiums received from its insureds without paying Plaintiff for the covered services. (Compl.

¶¶ 70, 81.) As such, if the services are not covered services under the patients' insurance policies, HCSC could not have unjustly retained any premiums. In this way, these claims necessarily have "a connection with" or "a reference to" the patient's insurance policies. *See Jass*, 88 F.3d at 1493. A plaintiff cannot avoid ERISA preemption by attempting to sue on a theory independent of its Assignments of Benefits and the ERISA plans where the underlying claim necessarily concerns the contractual benefits in the ERISA plan. *See Abilene Reg'l Med. Ctr. v. United Indus. Workers Health & Benefits Plan*, No. 06-10151, 2007 WL 715247 (5th Cir. 2007) (holding that ERISA contracts were not "truly independent" from the provider's assignee status). Moreover, without invoking the insurance policies, HCSC has no duty to pay M&G anything. *See Lewis*, 342 Ill. App. 3d at 105, 793 N.E.2d at 877. This again is the kind of "end run" around ERISA courts routinely reject. *See Pohl*, 956 F.2d at 128. Both the unjust enrichment and *quantum meruit* counts alleged here are subject to conflict preemption.

The broad reach of conflict preemption extends to claims for account stated. "[A]n account stated claim is only a form of proving damages and cannot be used to establish liability." *Truserv Corp. v. Flegles Inc.*, No. 03 C 3284, 2004 WL 1656567, at *5 (July 22, 2004) (citing *Sexton v. Brach*, 124 Ill. App. 3d 202, 464 N.E.2d 284 (3d Dist. 1984)). An account stated must be based upon previous transactions between the parties establishing the amount of a preexisting liability. *Air Tiger Express, Inc. v. Barclay*, No. 08 CV 1945, 2008 U.S. Dist. LEXIS 51432, *7 (N.D. Ill. June 26, 2008). Plaintiff incorporates by reference all allegations in the Complaint into this count (Compl. ¶ 87) and specifically claims "payment of benefits under the health insurance contracts of the patients" (Compl. ¶ 92). Plaintiff alleges that HCSC acquiesced here by failing to respond to the health insurance claims forms that Plaintiff submitted. (Compl. ¶ 94.) The resolution of these claims thus necessarily involves referring to the health benefit plans at issue, making it subject to conflict preemption. *See Jass*, 88 F.3d at 1493.

### D. Plaintiff's Account Stated Count Fails To State A Claim.

Count VII also fails to state a claim for additional reasons. "Merely sending an invoice does not create an account stated unless the debtor or creditor intends to establish a balance due or a final settlement to date." *Air Tiger*, 2008 U.S. Dist. LEXIS 51432, at *6. This claim must be based upon previous transactions between the parties establishing the amount of a preexisting liability. *Id*. at *7. Allegations that an invoice was sent to the defendant, and that the defendant acquiesced and agreed to pay cannot survive a motion to dismiss. *Id*. Here, Plaintiff has alleged only that HCSC's failure to dispute the services rendered or amount owed as indicated on the claim forms demonstrates HCSC's acquiescence to the amount due. (Compl. ¶ 95.) These allegations are inadequate to state a claim of account stated. Plaintiff fails to allege any preexisting liability or an intention to establish a balance due by sending the claims forms, which are just invoices. For these reasons, the account stated count should be dismissed as to all claims asserted, whether or not they invoke contracts governed by ERISA.

## IV. CONCLUSION

For the reasons urged herein, Count VII should be dismissed with prejudice for failure to state a claim. Additionally, all counts of Plaintiff's Complaint against HCSC should be dismissed with prejudice to the extent those counts invoke benefit plans governed by ERISA.

Dated: August 7, 2008                            HEALTH CARE SERVICE CORPORATION

                                                 /s/ Douglass G. Hewitt, Esq.
                                                 One of Its Attorneys

Douglass G. Hewitt, Esq.
Alison Dieterichs Alvarez, Esq.
Neal Gerber & Eisenberg LLP (ID No. 13739)
Two North LaSalle Street – Suite 2200
Chicago, IL  60602
Telephone:  312-269-8481/Facsimile:  312-269-1747

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2008, I electronically filed the foregoing Memorandum Of Law In Support Of Motion To Dismiss and Exhibit A (with redacted Exhibit 1 to Exhibit A) with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Douglas L. Prochnow, prochnow@wildmanharrold.com
John A. Roberts, roberts@wildmanharrold.com
Jennifer Lynn Baugh, baugh@wildmanharrold.com
Jeremy Steven Goldkind, goldkind@wildmanharrold.com
Wildman Harrold Allen & Dixon LLP
225 West Wacker Drive
Chicago, IL  60606


I, Douglass G. Hewitt, an attorney, certify that I caused a copy of Defendant's Exhibit 1 to Exhibit A, to be served upon counsel of record listed below by having same placed in a properly-addressed postage-prepaid envelope, and having that envelope deposited in the U.S. mail at Two North LaSalle Street, Chicago, Illinois on August 7, 2008, before the hour of 5:00 p.m.:

Douglas L. Prochnow
John A. Roberts
Jennifer Lynn Baugh
Jeremy Steven Goldkind
Wildman Harrold Allen & Dixon LLP
225 West Wacker Drive
Chicago, IL  60606


Dated:   August 7, 2008

/s/ Douglass G. Hewitt
Douglass G. Hewitt


NGEDOCS: 1554617.1

**EX.1 TO DEF'S EX. A**
**PAGE 1**

**Exhibit A from Complaint**

| DOS | PATIENT | GROUP | GROUP NAME | PATIENT ID | AMT BILLED |
|---|---|---|---|---|---|
| Redacted | Redacted | P72713 | Tablecraft Products Company - Premium Group | Redacted | $7,140.05 |
| Redacted | Redacted | P10421 | Santa's Best / Illinois Premium Group | Redacted | $17,158.40 |
| Redacted | Redacted | 003735 | Portland Cements Association - Cost Group | Redacted | $5,488.16 |
| Redacted | Redacted | P85010 | Electrical Insurance Trustees - Cost Group | Redacted | $13,591.55 |
| Redacted | Redacted | P72713 | Tablecraft Products Company - Premium Group | Redacted | $10,281.55 |
| Redacted | Redacted | S59368 | Alexian Brothers Health System - Premium Group | Redacted | $5,333.11 |
| Redacted | Redacted | P51923 | Wilcor Incorporated - Premium Group | Redacted | $6,593.91 |
| Redacted | Redacted | S59368 | Alexian Brothers Health System - Premium Group | Redacted | $14,853.00 |
| Redacted | Redacted | S59368 | Alexian Brothers Health System - Premium Group | Redacted | $4,761.69 |
| Redacted | Redacted | 081209 | United Airlines - Cost Group | Redacted | $3,879.00 |
| Redacted | Redacted | 005966 | APP Pharmaceuticals, Inc. - Premium Group | Redacted | $3,519.00 |
| Redacted | Redacted | P08856 | Family Alliance Inc. - Premium Group | Redacted | $17,551.10 |
| Redacted | Redacted | 014594 | Pepsi Americas Active Salary - Cost Group | Redacted | $13,408.80 |
| Redacted | Redacted | 081208 | United Airlines - Cost Group | Redacted | $2,629.00 |
| Redacted | Redacted | P14922 | Conference Plus Inc. - Cost Group | Redacted | $4,258.85 |
| Redacted | Redacted | P85010 | Electrical Insurance Trustees - Cost Group | Redacted | $5,807.10 |
| Redacted | Redacted | 016397 | Tellabs Inc - Cost Group | Redacted | $4,953.85 |
| Redacted | Redacted | 287824 | Accenture LLP - Cost Group | Redacted | $2,529.50 |
| Redacted | Redacted | P82189 | Schaumburg Toyota - Premium Group | Redacted | $4,299.00 |
| Redacted | Redacted | P04549 | Klein Tools, Inc - Cost Group | Redacted | $3,710.00 |

**EX.1 TO DEF'S EX. A**
**PAGE 2**

| DOS | PATIENT | GROUP | GROUP NAME | PATIENT ID | AMT BILLED |
|---|---|---|---|---|---|
| **Redacted** | **Redacted** | P48800 | Genesis Medical Imaging - Premium Group | **Redacted** | $10,384.65 |
| **Redacted** | **Redacted** | P57320 | Fellowes, Inc. - Cost | **Redacted** | $22,762.70 |
| | | | | | $184,893.97 |